**Ronald MEDRANO and Roland John Medrano, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–82–0378–CR, 01–82–0416–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 8, 1983.

Randy Schaffer, Houston, for appellants.

Timothy G. Taft, Houston, for appellee.

Before JACK SMITH, LEVY and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

After a joint trial, appellants Ronald Medrano and Roland Medrano were found guilty by a jury of burglary of a habitation with intent to commit theft. The court assessed the punishment of each at five years confinement.

Complainant Richard Garcia's home was burglarized between 7:45 a.m. and 5:15 p.m. on June 11, 1981, by someone breaking the deadbolt lock on the front door. Garcia testified at trial that a 30–30 Winchester rifle, a portable television, costume jewelry, sheets and pillowcases were taken without his consent. One of the sheets was "rainbow-colored."

A State's witness, Mark Polk, testified that around 4:30 p.m. that day, he observed Roland Medrano in the front yard of the complainant's house, walking toward the road and carrying what looked like a rifle, wrapped in a rainbow-colored sheet. Polk passed within two feet of Roland and said "Hi," to which Roland replied, "Mind your own business." Polk then noticed the front door of the complainant's house was open and damaged. He first ran across the street to tell Isaac Marez, and then ran two doors up the street to inform Ronald Parr.

Parr testified that he had a clear, unobstructed view of Roland, about twenty-five feet away, walking alone on the sidewalk with either a rifle or a small caliber shotgun wrapped in a multi-colored sheet or blanket. Parr could see several inches of the butt of the gun protruding from the wrapping. Roland walked past a fence and through a car wash area next door just as Polk ran up to Parr to report the burglary.

Polk, Marez and Parr jumped into an automobile and circled the block, looking for the burglar. On the next street, they saw Roland and his brother, Ronald Medrano, standing behind a 1978 blue Camaro parked at the Medrano family's restaurant. Parr testified that he saw Roland put the gun in the car's trunk and then slap hands with Ronald in a self-congratulatory fashion. The two climbed into the Camaro with a third person and drove off. Parr, Polk, and Marez followed, copied the license number of the car, and returned to Marez's home to phone the police.

Houston Police Department Officer Curtis E. Roark, Jr., arrived at the Marez house, radioed to determine the registered

address for the license number, and drove to the address given, the Medrano residence, where he found the blue Camaro with the reported license number parked in front. Back-up units continued surveillance of the Camaro while Officer Roark went to pick up the witnesses Parr and Polk, who accompanied him to a store near the Medrano house and there identified Ronald. They then went to the Medrano house, where they recognized Roland as the person carrying the rifle, although he had changed clothes.

The brothers were arrested, but the trunk of the Camaro was apparently not searched. Both appellants testified that they had worked in the family cafe that day from 12:00 p.m. until 5:15 p.m., and both denied ever leaving the premises. Their brother, their mother, and a customer corroborated their alibi. No fingerprints were found in the burglarized house, and the stolen items were not recovered.

Appellant's first ground of error challenges the sufficiency of the circumstantial evidence to prove that Roland Medrano burglarized the Garcia residence. In particular, Roland asserts the failure of the evidence to establish that he entered the habitation.

■■ Guilt of the offense of burglary can be established circumstantially by the combined and cumulative force of all the incriminating circumstances, *Phipps v. State,* 630 S.W.2d 942, 945 (Tex.Cr.App. 1982), but proof of guilt by accompanying circumstances is subject to the same rigorous standard required of direct evidence, i.e., proof beyond a reasonable doubt. *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App. 1983) (en banc opinion on rehearing). In deciding whether the circumstantial evidence is sufficient to support a conviction, each case must necessarily be tested by its own facts. *Robinson v. State,* 570 S.W.2d 906, 910 (Tex.Cr.App.1978); *Ysasaga v. State,* 444 S.W.2d 305, 308 (Tex.Cr.App. 1969).

■■ A person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony or theft. Tex.Penal Code Ann. § 30.02(a)(1) (1974).

■■ The record reflects that the burglary of the complainant's house by a forceful breaking and entering and the theft of certain items occurred during daylight hours on June 11, 1981. Roland Medrano was seen by one witness leaving the yard of the burglarized residence and by another walking down a sidewalk away from the scene. He was carrying an object that looked like a rifle, wrapped in a sheet resembling one stolen from the same house. The same witness saw him placing these items in the trunk of a car, after which he slapped his brother's hand in a celebrative manner and drove away. Evidence that a house has been burglarized, together with the accused's unexplained possession of some of the property recently stolen from the house, is sufficient to support a conviction for burglary. *Thompson v. State,* 615 S.W.2d 760 (Tex.Cr.App.1981); *Ward v. State,* 581 S.W.2d 164, 168 (Tex.Cr.App.1979).

■■ The conviction here does not rest upon later possession of stolen goods, *Reyes v. State,* 468 S.W.2d 64 (Tex.Cr.App.1971), nor does it rest solely upon the accused's proximity to the scene of the crime, *Robinson v. State,* 570 S.W.2d 906 (Tex.Cr.App. 1978); *Drager v. State,* 555 S.W.2d 743 (Tex.Cr.App.1977). The appellant, Roland Medrano, was observed within a few feet of the damaged entry *and* seen holding goods stolen from the house immediately after discovery of the loss.

This is also not a case where the State failed to establish the identity of goods recovered from a suspect with those stolen, as in *Nichols v. State,* 479 S.W.2d 277 (Tex. Cr.App.1972). The complainant's property was never found, but the description of property seen in the possession of appellant Roland Medrano matched the description of goods taken from the victim's house.

Also distinguishable is *Moreland v. State,* 126 Tex.Cr.R. 367, 72 S.W.2d 273 (Tex.Cr. App.1934), wherein the evidence was insuf-

ficient to show the accused had possession of any stolen property. In *Moreland,* a witness observed the accused near a burglarized store from a distance of half a block or more, just as it was getting daylight, carrying something that looked like a pasteboard box about as long as one which was stolen. In the case before us, the appellant was seen at close range in broad daylight coming from the yard of the burglarized residence, carrying a rifle wrapped in a rainbow-colored sheet.

■ Roland Medrano did not try to explain his possession of a rifle wrapped in a rainbow-colored sheet at the scene of the burglary; he *denied* the possession altogether. It is not reasonable to assume he acquired the items in some lawful manner when he denied ever having them. The jury had its opportunity to evaluate his alibi testimony and rejected it. Considering the entire record in evaluating the sufficiency of the evidence, *Kuykendall v. State,* 609 S.W.2d 791, 794 (Tex.Cr.App.1980), and viewing the evidence in the light of the presumption of innocence, we conclude that the evidence supports the jury's finding that, beyond a reasonable doubt, Roland Medrano is guilty of the burglary for which he was convicted. Appellant's first ground of error (pertaining only to Roland Medrano) is overruled.

As their second ground of error, the appellants urge the insufficiency of the evidence to convict Ronald Medrano of burglary, either alone or as a party.

No evidence was adduced that Ronald was present at the scene of the burglary. The State's theory is that Ronald and Roland were partners in the burglary, that Ronald knew the rifle and sheet placed in the trunk were stolen, and that he helped Roland by providing the means of secreting the stolen property and leaving the scene.

The court properly charged the jury on the law of parties as found in Section 7.02(a)(2) of the Penal Code.

The incriminating evidence elicited by the State against Ronald is as follows: Ronald Parr testified that he saw Ronald Medrano standing next to Roland behind the blue Camaro while Roland was putting the gun in the trunk. He then saw the brothers slap each other's hands like football players do on TV after a touchdown, get into the car, and drive away. Mark Polk testified that he saw the two brothers at the back of the car beside the restaurant. He saw Roland place a long object wrapped in a sheet in the trunk, shut it, and slap hands with Ronald, after which the two drove off together.

Ronald Medrano testified, on the other hand, that he, like his brother, spent the entire afternoon inside the family's cafe. He denied ever standing near the open trunk of the Camaro and slapping hands with Roland, and stated that he and his brother drove away in separate cars. He claimed there were two other cars in the neighborhood similar to his, and he swore that police opened his trunk and searched both the interior and trunk of the car without his consent. An older brother, the boys' mother, and a customer each testified that the boys were in the cafe all afternoon until closing at 5:15 p.m.

■ Agreement of parties to act together in committing an offense may be established by circumstantial evidence, *Fantroy v. State,* 474 S.W.2d 490 (Tex.Cr.App. 1971), but a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged. *Alvarado v. State,* 632 S.W.2d 608, 610 (Tex.Cr.App.1982); *Drager v. State, supra.* To determine whether an individual is criminally responsible for the conduct of a primary actor, a court may look to events before, during, and after the commission of an offense, *Morrison v. State,* 608 S.W.2d 233, 234 (Tex.Cr.App.1980), but there must also be evidence of a common purpose or design prior to or contemporaneous with the criminal event, *Urtado v. State,* 605 S.W.2d 907, 911 (Tex.Cr.App. 1980) (citing *Easter v. State,* 536 S.W.2d 223, 228 (Tex.Cr.App.1976)). Accessory conduct is no longer recognized under Texas law as conduct making one a party. *Id.* 605 S.W.2d at 912. Such acts are now prohibit-

ed under Tex.Penal Code Ann. § 38.05 (Vernon 1974), which defines a separate and distinct crime of "hindering apprehension or prosecution." *Id.*

■ The conclusion that Ronald committed some culpable act rests entirely upon inference derived from (1) his conduct *after* the burglary and (2) his alibi defense of his brother in contradiction of the State's eyewitness testimony. While these acts may raise a strong suspicion of his guilt, they do not exclude every reasonable hypothesis other than his participation in the burglary. The evidence of his presence at the trunk of the car, his greeting of his brother, watching his brother place the object in the car trunk, and his driving the getaway car do not indicate to a moral certainty a plot to assist made prior to or contemporaneous with the burglary. Ronald's car had been parked next to the restaurant since noon that day, according to defense testimony; family members got into their cars and drove home around 5:15 p.m., when the cafe was closed for the day. Ronald's mere presence at the back of his brother's car, away from the scene of the burglary, is as consistent with innocence as it is with guilt. The congratulatory gesture after Roland placed the gun in his (Ronald's) trunk could have been a response to any of a variety of explanations Roland may have made as to how he acquired the gun. Even if Ronald suspected the gun was stolen, his subsequent conduct would not make him a party to burglary. Appellants' second ground of error is sustained.

As their third ground of error, appellants claim the trial court erred in permitting the jury to hear a prejudicial statement during the prosecutor's closing argument, which had the effect of "bolstering the contested credibility of Officer Roark."

Ronald testified, during the defense's case-in-chief, that police officers searched his car and trunk after his arrest and did not find a gun. Officer Roark was called back to the stand to state, in rebuttal, that he made no search. Defense witness Juan Perez, a neighbor of the Medranos, testified that on the afternoon of the burglary, three or four Houston police officers armed with shotguns ran into his yard while he was seated on the front porch. They asked if he was Roland Medrano, and, after he answered that Roland lived across the street, the officers ran to the Medrano house.

During the prosecutor's final argument, in referring to Perez's testimony that officers, thinking he was Roland, had threatened him with shotguns, the following remarks were made:

We got Juan Perez. I already went through that. Number one, that shotgun stuff. That's a ploy to get to your emotion to try and instill some prejudice on your part. Because he is trying to find a cop hater. So he is going to try and paint a picture like a bunch of pigs come up here and did this to me. Had no relevance whatsoever to this trial.

That was just a blatant attempt to get to you. He is hoping he would find one person who has read about some police misconduct in a newspaper and says, Oh, that must be what they always do. Not remembering that those guys are out there everyday making thousands of decisions everyday that don't wind up in the newspaper.

We have had eight of them dead in the last two months. Doing their job.

*MR. GARCIA:* Objection, Your Honor, to argument outside the record.

*THE COURT:* Well, ladies and gentlemen of the jury, you heard the evidence. Please be bound thereby.

The prosecutor's remark was clearly improper and outside the record, and defense counsel's objection was proper. *Escobedo v. State,* 620 S.W.2d 590, 591 (Tex.Cr.App. 1981) (en banc). The State urges, however, that the preceding exchange did not adequately preserve any objection to jury argument in that no court ruling was obtained. The weight of case authority favors this conclusion.

■ An objection to jury argument must be pressed to the point of procuring a ruling, or the objection is waived. *DeRusse v. State,* 579 S.W.2d 224, 235 (Tex.Cr.App.

1979); *Bailey v. State,* 532 S.W.2d 316, 322 (Tex.Cr.App.1975), *Williams v. State,* 531 S.W.2d 606, 608 (Tex.Cr.App.1975), *rev'd on other grounds on rehearing* (1976). In *Mayberry v. State,* 532 S.W.2d 80, 84 (Tex.Cr. App.1976), the trial judge's response that the "jury will recall the evidence" was not sufficient to preserve error in permitting argument outside the record. In *Nichols v. State,* 504 S.W.2d 462 (Tex.Cr.App.1974), the court's reply to defense counsel's objection to prosecutorial argument was "The jury will have to remember the testimony". The Court held that nothing was presented for review because it was not clear whether the trial court had sustained or overruled the objection. *Id.* at 464.

Appellants contend, to the contrary, that the judicial response to defense counsel's objection here is comparable to that in *Cook v. State,* 650 S.W.2d 436 (Tex.App.—Houston [14th Dist.] 1982, no pet.), where the reviewing court upheld the effectiveness of counsel against a claim of failure to obtain a ruling on improper argument. That opinion was not based upon a claim of prejudice.

In this case, the judge's reply comes closer to a jury instruction to disregard than in *Mayberry* or *Nichols* or *Cook;* nevertheless, well-established authority requires a clear ruling, and we conclude that the error was not properly preserved for review.

Appellants further urge that, even if the court's response does not amount to a ruling on the objection, the error in the improper argument was not waived because it was so prejudicial that proper instruction could not have neutralized the harm. *Plunkett v. State,* 580 S.W.2d 815, 823 (Tex.Cr.App. 1979).

■ To determine whether the State's improper argument is incurable error, the entire record must be reviewed to ascertain the probable effect such argument had upon the minds of the jurors. *Crowe v. State,* 400 S.W.2d 766, 768 (Tex.Cr.App. 1966).

Neither *Escobedo v. State,* 620 S.W.2d 590 (Tex.Cr.App.1981) (en banc), nor *Lopez v. State,* 500 S.W.2d 844 (Tex.Cr.App.1973), both cited by appellants, controls the decision on this ground of error because each case is fundamentally distinguishable. In *Escobedo,* the prosecutor in a burglary case argued outside the record concerning the unrelated death of a police officer *shot by the accused,* and the trial court *overruled* the defense objection.

■ In *Lopez,* the prosecutor in a trial for the capital murder of a police officer said, "I'm concerned about the open season that is coming on police officers. I believe the same week these officers were killed there were eleven killed in America." This argument outside the record was held incurable despite the court's instruction to disregard. The remark made by the prosecutor here, that eight officers had died in the last two months, was obviously an attempt by the State to explain the overzealous actions of the police in running onto Perez's lawn armed with guns and, perhaps, to create sympathy for the police. It was not a plea to punish the appellants, as in *Lopez.*

A general remark about officers dying in the line of duty was not so prejudicial as to require a mistrial in *Gholson v. State,* 542 S.W.2d 395, 398 (Tex.Cr.App.1976), where the trial court sustained the defendant's objection and gave a curative instruction. Here the appellants did not object to the improper argument because it was prejudicial, but because it was outside the record, and no mistrial was requested.

We conclude that the argument was not so harmful as to require reversal. The appellants' third ground of error is overruled.

Appellant's fourth ground of error contends, as to Ronald Medrano, that trial counsel's joint representation of him and his brother created a conflict of interest which denied him effective assistance of counsel and a fair trial. Because of our action sustaining the second ground of error, Ronald Medrano's fourth ground of error is moot.

The conviction as to Roland Medrano is affirmed. The conviction as to Ronald Medrano is reversed and remanded to the trial court with instructions to enter a judgment

of acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).