NO. 07-03-0201-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 23, 2004

_____

T.J. ROBINSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-401020; HONORABLE CECIL PURYEAR, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

After appellant T.J. Robinson pled not guilty to an indictment alleging burglary of a habitation with intent to commit assault, a jury found him guilty, and the trial court assessed as punishment a 20 year sentence. By this appeal, appellant challenges the legal and factual sufficiency of the evidence to support the conviction and claims the trial court erred

in allowing one of the investigating officers to testify to a legal conclusion over his objection. We will affirm.

In the early morning hours of September 16, 2003, Anthony Walter, his fiancee and her two daughters were at home watching television when they heard a loud knock at the front door. Upon answering the door, Walter encountered appellant, whom he had never seen before. Appellant asked to speak to an individual named "Nathaniel." Walter informed appellant he knew no one by that name and asked him to go. As appellant was leaving, he uttered, "In case you doesn't wake up in the morning, you have a good night." Perceiving that statement to be a threat, Walter retrieved his handgun and contacted the police. In response to questioning by the dispatcher, Walter opened the front door to determine in which direction appellant departed. When he did so, appellant reappeared and placed his foot inside the door of the house, grabbed Walter about the waist, and attempted to push him back into the house. Walter resisted, and appellant pulled him out of the house and thrust him against the burglar bars attached to a window on the porch. Following a brief physical altercation, Walter, who was a former Birmingham, Alabama police officer, discharged his firearm into the concrete porch in an effort to scare appellant into submission. Walter's tactic worked, and he was able to restrain appellant until officers arrived at his house. During the scuffle, Walter suffered physical pain and injuries to his arm and lip.

By his first issue, appellant maintains the evidence is both legally and factually insufficient to show (1) he actually entered Walter's home on September 16, 2002; and (2) he did so with the intention of committing assault. We disagree. In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Cr.App. 1999), *cert denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 44 U.S. at 319.

In reviewing the factual sufficiency, we examine all of the evidence neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *See* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). We must, however, remain cognizant of the factfinder's role and unique position–one the reviewing court is unable to occupy. *See* Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000). The jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex.Cr.App. 2001). Finally,

3

a proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Cr.App. 2003).

For purposes of this appeal, a person commits burglary if, without the effective consent of the owner, he enters a habitation with an intent to commit an assault. Tex. Pen. Code Ann. § 30.02(a)(1) (Vernon 2003). "Enter" means to intrude any part of the body or any physical object connected with the body. *Id*. § 30.02(b). A person commits an assault when he intentionally, knowingly, or recklessly causes bodily injury to another. *Id*. § 22.01(a)(1) (Vernon Supp. 2004). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id*. § 1.07(a).

Intent to commit a felony, theft, or an assault must exist at the moment of entry or there is no offense under section 30.02(a)(1). DeVaughn v. State, 749 S.W.2d 62, 65 (Tex.Cr.App. 1988). Furthermore, once unlawful entry is made, the crime is complete, regardless of whether the intended theft, felony, or assault is actually completed. Ford v. State, 632 S.W.2d 151, 153 (Tex.Cr.App. [Panel Op.] 1982). Finally, intent is a fact issue which is usually established by circumstantial evidence and inferred from the acts, words, and conduct of the accused. *See* Moore v. State, 969 S.W.2d 4, 10 (Tex.Cr.App. 1998); *see also* Dues v. State, 634 S.W.2d 304, 305 (Tex.Cr.App. 1982).

Appellant initially challenges the State's evidence establishing his entry into the Walter home. In support of that challenge, appellant suggests the discrepancies between

4

Walter's trial testimony and his statement to police on the night of the offense, recorded on the police car video camera, coupled with Walter's fiancee's ambivalence about whether appellant indeed entered the house, render the evidence legally and factually insufficient. We note, however, Walter was adamant at trial that appellant placed his foot between Walter's legs "inside the doorway" of the house. That testimony was corroborated by the testimony of one of Walter's fiance's two daughters, who averred she saw appellant enter her house with his foot. Similarly, the other daughter testified "[appellant's] foot . . . was close to where the carpet began." Furthermore, appellant's fiancee affirmed appellant stepped into her house and "tried to push [Walter] back" into the house. Finally, the investigating officer testified both daughters told him "that [appellant] actually made it into the home."[1] The jury was the sole judge of the credibility of those witnesses and the weight to be given their testimony, and it was also the exclusive province of the jury to reconcile the conflicts in the evidence. Tex. Code Crim. Proc. Ann. arts. 36.13 & 38.04 (Vernon 1979 & 1981); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Cr.App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). By its verdict, the jury clearly resolved any conflicts in the evidence against appellant and found he, indeed, "entered" the home.

Next, appellant alternatively argues that because the evidence showed he committed the assault before he entered the home, "no rational trier of fact could have found [him] guilty of burglary of a habitation with intent to commit assault." Initially, we note

---

[1]Hearsay evidence admitted without objection has probative value as substantive evidence. Fernandez v. State, 805 S.W.2d 451, 455-56 (Tex.Cr.App. 1991).

appellant was not charged with the completed commission of an assault during the course of a burglary. Therefore, if the jury believed appellant entered Walter's house with the requisite intent, then the events that transpired after the unlawful entry were irrelevant. *See DeVaughn*, 749 S.W.2d at 65. Thus, the jury was only required to consider that evidence bearing upon appellant's intent at the time he entered the Walter home. Appellant's acts of grabbing Walter around the waist, pushing him into the house, pulling him onto the porch, then picking him up and throwing him against the burglar bars on the porch window were sufficient proof of his intent to commit assault on Walter. Furthermore, the jury, as the trier of fact, was entitled to believe the testimony of the State's witnesses that appellant entered the house before he assaulted Walter, and to disbelieve appellant's theory that "the assault was complete when Mr. Walter sustained the bodily injury after he was first 'pulled' then 'pushed' and finally 'pulled out'" of the house by appellant. Thus, after reviewing all of the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Likewise, having considered all of the evidence in a neutral light favoring neither party, we hold the jury's verdict is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In short, we conclude the evidence is legally and factually sufficient to support a finding that appellant entered the house prior to committing the assault and did so with the intent to commit assault. Appellant's first issue is overruled.

By his second issue, appellant claims the trial court erred in allowing officer David Paulk to answer the following question: "And certainly, did Mr. Walter, in the position he

6

was in, did he have the authority to defend his family?" We disagree. Before the State asked the foregoing question, it offered into evidence a video taped recording of the investigating officer's conversation with police dispatch regarding the status of his investigation at the Walter home. In the video, the following exchange occurred:

> Dispatch: Are you going to charge him [Walter] with anything, or was he acting in self-defense?
>
> Paulk: No, he was acting in self-defense, believe me. I just don't know if – you know, with this kind of stuff, when you discharge a firearm in self-defense, of course, nobody was struck with the round, what I need to do with the firearm. I'm not going to charge him with anything. You know, he was protecting himself and his family.

Appellant lodged no objection to Paulk's response.

To preserve error in admitting evidence, a party must make a proper objection and obtain a ruling on that objection. Tex. R. App. P. 33.1. In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection. Valle v. State, 109 S.W.3d 500, 509 (Tex.Cr.App. 2003). An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.* In this case, by the time the State asked Paulk whether Walter had the authority to defend his family, Paulk had already told the jury that he did. Thus, any error in the admission of the objected-to testimony was cured. Appellant's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

7

Don H. Reavis
Justice

Do not publish.